1 HENRY P. TUKAY
PO Box 23463
2 Pleasant Hill CA 94523
(925)-300-8230
3 In Pro Per



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA SAN FRANCISCO

| | |
|---|---|
| HENRY P. TUKAY, <br><br> Plaintiff <br><br> v. <br><br> INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 856/986, ITS REPRESENTATIVES, and DOES 1-10 <br><br> Defendants. | CASE NO. CV - 14 - 01906 - JST <br><br> PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO REINSTATE THE ORIGINAL COMPLAINT PURSUANT TO FRCP 60(b)1, 60(b)3, 60(b)6; 60(c)1, 60(d)1 <br><br> Date: April 16, 2015 <br> Time: 2:00 P.M. <br> Courtroom: 9, 19TH Floor <br> Judge: Hon. Jon S. Tigar <br> Complaint Filed: April 24. 2014 <br> Trial Date: No Date Set |

## INTRODUCTION

The National Labor Relations Board's annual report for fiscal 2010 included a number of Unfair Labor Practices against unions. The vast majority of these complaints said members were the ones hurt by the union officials that are supposed to protect them – from Unionfacts.com. Thus former union members have nowhere to turn but the Courts.

As provided for by FRCP 60(b)1, 60(b)3, 60(b)6, 60(c)1, 60(d)1 and the Statement of Facts herein restated, plaintiff will show that with the Court's inherent power and authority pursuant to the above FRCP, that plaintiff's Motion to Reinstate the Original Complaint should be granted.

Plaintiff's Reply Brief in Support of Motion to
Re-instate The Original Complaint

Case No CV 14-01906-JST

## STATEMENT OF FACTS

### A. FACTUAL BACKGROUND:

Plaintiff was held out of service without pay by United Airlines on 12/03/2012, which means that plaintiff was basically out of work without pay from that time on false, unproven, pretextual allegations by employer United Airlines, its agents and its purported witness (another employee). Plaintiff requested retirement upon consultation and advice of union representatives. At sometime around January 09, 2013 Union representative (R. Petrovsky) and United representative (K. Allain) came up with supposed "settlement agreement" in lieu plaintiff's termination from employment. Plaintiff rescinded and revoked said "settlement agreement" at around February 01, 2013 due to its reverely restrictive provisions, severely curtailing plaintiff's rights in violation of law, and practically devoid of any benefits to the plaintiff after 23 plus years of faithful service. Said "settlement agreement" aka LOA – Letter of Agreement was being touted by union representatives as beneficial and forced upon the plaintiff. Anyone reading and understanding the provisions of said "settlement agreement" does not need to be an attorney to understand that its nothing more than paperwork to cover United's interest and the Union itself and virtually nothing for the plaintiff herein. Copy of said "LOA" or "settlement agreement" is hereby attached again for the Court's reference. Upon rescinding and revocation of said "settlement agreement", supposedly the "union" started a grievance process for plaintiff with an initial (IRH) Investigative Review Hearing on February 28, 2013 and the company (United manager) upholding plaintiff's termination. On or around June 26, 2013, a JBA, Joint Board of Adjustment Hearing (per terms of the CBA – Collective Bargaining Agreement) was held on plaintiff's termination, but the said board comprised of union representatives (IBT) and company

representatives (United) was deadlocked and no determination on the case was made. Hence, no decision was made as to uphold or decide on plaintiff's termination.

On or around August 06, 2013, a meeting was held between union representatives R. Petrovsky and J. Lectora, Plaintiff, and union counsel D. Goldberg in an apparent attempt to discuss plaintiff's termination case. On this meeting, instead of attacking the company's (United's) allegations against plaintiff and whether to proceed on arbitration, plaintiff's conduct was questioned by union counsel and no decision was made as to arbitrate plaintiff's case at that time. Plaintiff informed union representatives on the kind of unfair treatment (which could be in violation of contract CBA) he experienced while at work but was rebuffed by union counsel.

Months passed and still no decision was made. Plaintiff has been trying to contact union Business agent R. Petrovsky on the issue of arbitration via emails, phone calls and letters. Finally, on or around October 28, 2013, plaintiff received an **undated** letter from R. Petrovsky stating that plaintiff's "grievance lacks merit" and would not be pursued any further. At sometime around November 2013, Plaintiff spoke with Teamsters union Business Agent David Elmore of Southern CA IBT Local 986 indicating it was R. Petrovsky that makes final decision whether to take the case to arbitration. But according to R. Petrovsky it was the union counsel that makes such decision. Such conflicting statements raises issues as to union representatives' conduct in this case.

Here, in this case, if Plaintiff's "grievance lacks merit" and "would not prevail in an arbitration proceeding" (Exhibit 1 Original Complaint, ECF 1) as defendant/s alleged, then defendant/s should not have started any grievance process from the beginning and informed plaintiff of his options. But the sudden about face or 180 degrees turn on defendant union's decision raises serious issues of union misconduct.

Plaintiff's Reply Brief in Support of Motion to
Re-instate The Original Complaint

Case No CV 14-01906-JST

## B. LEGAL ARGUMENT

1) As provided for of FRCP 60(b)1: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons (1) mistake, inadvertence, surprise, or excusable neglect".

The language and its plain meaning is very clear as it states but defendant/s want specific facts. Plaintiff, as a pro se litigant, already subjected to the arbitrary, deceptive, and discriminatory conduct of defendant/s in their representation certainly felt he has made a mistake contrary to his intention to pursue claims against defendant/s herein.

2) As provided for FRCP 60(b)3 : "...fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;"

Defendant states as "absurd" plaintiff's claim for relief based on the above FRCP provision. Plaintiff's Statement of Facts and Exhibits in the original Complaint ("The Complaint") is replete with all the numerous instances of specific conduct by union representatives as to their handling of plaintiff's grievance, their specific acts and statements that are contrary to their supposed ideals and tenets the union is supposed to represent. Defendant's own Motion to Dismiss, see ECF 16 is in itself deceptive and full of mischaracterization – on first paragraph, Statement of the Case, it states: "...the Local Unions are not and have never been plaintiff's recognized collective bargaining representative" which is simply untrue and untenable.

The following are summaries of specific facts of union official's conduct in this instant case as stated in the original Complaint ("The Complaint").

   a) Defendant's (union representatives) refusal and reluctance to provide information on United's allegations against plaintiff citing it as "internal company documents" and inaccessible to Plaintiff per United's labor relations.
   b) Defendant representative R. Petrovsky have stated, verbal and written (via email) that plaintiff's case is basically futile, siding with the company (united) and that moving forward with Plaintiff's grievance will result in Plaintiff's termination. Union representative certainly made sure Plaintiff was terminated by their deliberate failure to take grievance case further.

    c) Plaintiff's letters and request for specific reasons on defendant/s failure to take grievance to arbitration were simply unanswered. (see Exhibits Original Complaint)
    d) Plaintiff by and through conduct of defendant/s and its representatives has suffered irreparable harm by their deliberate failure not only to represent him but their own discriminatory conduct.

As a further note, Plaintiff herein was a victim of criminal assault and threats **inside** United Airlines' facilities on August 28, 2007 by a belligerent employee while performing his duties and sustained injuries from such assault. But said belligerent employee was returned to his job with the then union's full support and his case was taken to arbitration. Elements of and former local union officials of said union are still very much present with Plaintiff's former union. This in itself presents a case of disparate treatment by union officials and defendant/s. certainly choose who to represent and fight for. This other belligerent employee was of different race. Thus as far as Plaintiff's EEOC Title VII complaint against defendant, plaintiff herein believes he was discriminated upon. Defendant has inherited and thus is a signatory to the current CBA, Collective Bargaining Agreement, with respect to anti-discriminatory provisions on the CBA, specifically found on Article I, Section J, Subsection 3, and states:

"3. There shall be no harrassment and/or discrimination between employees covered by this Agreement based on race, color, sex, religion, national origin, disability, veteran status or sexual orientation." In fact defendant attached a copy of CBA on their MTD, ECF 16.

Plaintiff again herein respectfully asks the Court to review the Statement of Facts on the Original Complaint, ECF 1, paragraphs 5a, 5b, 5c, 5d, 5e, 5f (Exhibits) so as not to repeat the pleadings herein and for brevity. See also Plaintiff's Opposition to Defendant's Motion to Dismis, ECF 19 (Original Complaint) on Plaintiff's further rebuttal and arguments.

Plaintiff recently also received his Federal Notice of Right to Sue from EEOC dated March 18, 2015, copy hereby attached as Exhibit 2.

3)       As provided for in FRCP 60(b)6: "...any other reasons that justifies relief". Plaintiff herein has cited numerous facts and instances on Defendant/s representatives' conduct that has injured Plaintiff in violation of established anti-discriminatory statutes and labor laws. And for reasons cited above and in the original Complaint, and finally in the interest of justice, the Court should grant Plaintiff's Motion to Reinstate.

Defendant contends that FRCP 60(b) is simply reserved for extraordinary circumstances and that Plaintiff waited too long to file for reinstatement. The Court should consider the facts on this case and that Plaintiff is well within the timeframe allowed under FRCP 60(c)1 which is within 1 year.

## CONCLUSION

For reasons cited above and the Plaintiff's belief of exceptional circumstances and facts his case, the Court should grant Plaintiff's Motion to Reinstate his original Complaint ("The Complaint") and be allowed to make amendments as needed and permitted by current FRCP. As the US Supreme Court has ruled "the right of exclusive representation given to a union certified under the Railway Labor Act carries with it an obligation to exercise that right in good faith, to represent its members in a fair and impartial manner without invidious discrimination."

Respectfully Sought and Requested:

Dated:  March 30, 2015

Henry P. Tukay
PO Box 23463
Pleasant Hill CA 94523
In Pro Per

Plaintiff's Reply Brief in Support of Motion to
Re-instate The Original Complaint

Case No CV 14-01906-JST

# EXHIBITS

1. FEDERAL NOTICE OF RIGHT TO SUE DATED 03/18/2015

2. RESCINDED SETTLEMENT AGREEMENT BETWEEN UNITED AIRLINES, IBT (INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 856/986) AND PLAINTIFF HENRY P. TUKAY

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

To: Henry P. Tukay
P.O. Box 23463
Pleasant Hill, CA 94523

From: Oakland Local Office
1301 Clay Street
Suite 1170 N
Oakland, CA 94612

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 555-2014-00533 | Bryan G. Hoss, Investigator | (510) 637-3240 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

For Dana C. Johnson,
Acting Local Director

03/18/15
(Date Mailed)

Enclosures(s)

cc: Administrator
Human Resources
INTERNATIONAL BROTHERHOOD OF TEAMSTERS SFO-LOCAL 856/986
453 San Mateo Avenue
San Bruno, CA 94066

**UNITED**

*SENT REVOCATION LETTER DATED 2/1/13
VIA US CERTIFIED MAIL 7012 1640 0002 0964 7691;
VIA EMAIL ON 2/3/13.*

Mr. Rich Petrovsky
Business Agent – Local 986
International Brotherhood of Teamsters

January 9, 2013

### Settlement and Release Agreement – Henry P. Tukay EID# 112827

Dear Mr. Petrovsky:

This letter will confirm the understanding and agreement reached between Mr. Henry P. Tukay, the Company, and the Union in full and final settlement of the proposed termination charges issued December 17, 2012, for an incident occurring on November 30, 2012.

Whereas Mr. Tukay submitted his request to retire after these termination charges were issued and the parties wish to resolve this matter. It was therefore agreed, subject to the following conditions, that all charges will be suspended by United Airlines in lieu of the following retirement provisions:

1. The "Effective Date" of this Letter of Agreement and Mr. Tuklay's retirement shall be seven (7) days following the first date it has been signed by all parties hereto.

2. Mr. Tukay will only be eligible for retiree medical benefits. Mr. Tukay will not now or at any time in the future be eligible for flight benefits, a retiree badge, parking privileges, access to company property, or any additional benefits either expressed or implied, other than the aforementioned medical benefits offered in this Agreement along with any pensions administered through the PBGC. It will be Mr. Tukay's responsibility to meet the eligibility requirements and make the necessary payments in order to maintain those benefits.

3. Mr. Tukay shall not be eligible for rehire by United or any of its subsidiaries at any time in the future.

4. Mr. Tukay's employee profile will be executed as a retirement in lieu of separation.

5. Mr. Tukay will not be entitled to any vacation accrual or pay during the period he was held out of service (HOS) during the investigative inquiries. He will not be eligible for retroactive benefits or insurance coverage during the period of (HOS).

6. Upon execution of this agreement, the Company will not pursue the termination charges.

7. In exchange for the valuable consideration being provided pursuant to this Agreement, Mr. Tukay fully releases, acquits, and discharges the Company, its parent corporation, officers, supervisors and employees, and the Union ("the Released Parties") from all claims (federal, state or local), grievances, matters, demands, causes of action and liabilities, of any kind or

nature whatsoever, whether known or unknown, which Mr. Tukay may, as of the date of his signature, hold or own, against the Released Parties, related to or arising from or could have been raised in connection with his United employment and separation.

8. Mr. Tukay expressly acknowledges and agrees that, by entering into this Agreement, he is waiving any and all rights or claims that he may have arising under the Age Discrimination in Employment Act of 1967, as amended, which have arisen on or before the date of the execution of the Agreement. He further expressly acknowledges and agrees that: (a) in return for this Agreement, he will receive consideration for which he otherwise would not have been eligible; (b) he has been advised to consult with an attorney before signing this Agreement; (c) he received a copy of this Agreement on **January 9, 2013**, and is being informed that he has twenty-one (21) days within which to consider the Agreement and, if he considered this Agreement for fewer than twenty-one (21) days, then he agrees that he has had a reasonable period of time to consider the Agreement; and (d) he was informed that he may revoke this Agreement within seven (7) days after he has executed such. After seven (7) days following the date he executed this Agreement, this Agreement will become effective or irrevocable ("the Effective Date"). Any revocation must be made in writing and delivered by hand, certified mail or email to the Company's Director of Labor Relations, Kellee Allain. Failure to revoke within seven (7) days will result in this waiver being permanent. If Mr. Tukay revokes within seven (7) days, the entire Agreement shall be null and void, including any warranties made herein.

9. The Parties agree that nothing in this Agreement is intended to or shall be construed to affect, limit or otherwise interfere with any non-waivable right of the undersigned under any Federal, state or local law, including the right to file a charge or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission ("EEOC") or to exercise any other right that cannot be waived under applicable law. The undersigned is releasing, however, his right to any monetary recover or relief should the EEOC or any other agency pursue claims on his behalf.

10. Mr. Tukay further agrees that he will not instigate, cause, advise or encourage any other persons, groups of persons, corporations, partnerships or any other entity to file litigation against UAL based upon events that were committed or omitted prior to the Effective Date of this Agreement. However, this specifically does not prohibit Mr. Tukay from testifying, assisting or participating in any manner in any investigation, proceeding or hearing addressing any other United employee's allegations of wrongdoing where such testifying, assisting or participating is protected under federal or state law.

11. The terms of this Agreement, and the very existence of this Agreement itself, shall remain strictly confidential. Each signatory to this Agreement individually covenants not to disclose any of the terms of this Agreement, whether generally or specifically, to any third party, except as may be required by order of a court of competent jurisdiction. Each signatory further covenants that he or it will be personally liable for any and all damages that may be caused to any other party by his/its unauthorized disclosure of any of the terms of this Agreement.

12. This Letter of Agreement was created and mutually agreed upon based on the unique circumstances in this specific situation. Both the Company and the Union agree this settlement is reached without setting a precedent, and without prejudice to any past, present or future grievance, and will not be cited by either party in cases other than those involving Mr. Tukay.

13. This Letter of Agreement is a compromise of disputed claims and is not intended to be, and is not, an admission of liability or fault by any party. The Parties agree to keep the terms of this agreement confidential.

14. The Parties agree to do all things necessary to execute all further documents necessary and appropriate to carry out and effectuate the terms and purposes of this agreement.

15. To the extent that a court of competent jurisdiction holds that any portion of this Agreement (other than the Covenant Not to Sue in Paragraph 7 and 8) is invalid or legally unenforceable, the Parties agree that the remaining portions shall not be affected and shall be given full force and effect.

16. This Agreement represents and contains the entire agreement and understanding among the parties hereto with respect to the subject matter of this Agreement, and supersedes any and all prior oral and written agreements and understandings. No representation, warranty, condition, understanding or agreement of any kind with respect to the subject matter shall be relied upon by the Parties except those contained herein.

17. This Letter of Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Parties hereto. In entering into this Agreement, the parties each acknowledge and represent that they have had the opportunity to have counsel review, explain, and investigate the facts pertaining to the Agreement contained herein as they deem necessary. They further represent that the terms of this Agreement have been completely read by them, and that those terms are fully understood and voluntarily accepted by them.

If this conforms to your understanding and agreement, please sign and date in the space provided. Also, please have Mr. Tukay read and acknowledge acceptance of the terms of this agreement by signing in the space provided below.

Sincerely,


Kellee Allain
Director – Human Resources, Tech Ops West          _____ day of _____, 2013
United Airlines (the "Company")

Case3:14-cv-01906-JST Document27 Filed04/02/15 Page12 of 12
Case3:14-cv-01906-JST Document19 Filed11/03/14 Page12 of 12

I understand and voluntarily accept the above terms of this agreement and my acceptance constitutes a full and final resolution of this matter. Accepted and agreed to

_____ day of _____, 2013

_____
Mr. Richard Petrovsky
International Brotherhood of Teamsters (the "Union")

I understand and voluntarily accept the above terms of this agreement and my acceptance constitutes a full and final resolution of this matter. Accepted and agreed to

~~29TH~~ day of ~~JANUARY~~, 2013

_____
Henry P. Tukay E/ID# 112827

NOTE:
SENT REVOCATION LETTER DATED 2/1/13
VIA US CERTIFIED MAIL NO. 7012 1640 0002 0964 4695,
VIA EMAIL ON 2/3/13 ADDRESSED TO KELLEE ALLAIN,
DIRECTOR OF LABOR RELATIONS SFOHR UNITED AIRLINES,
AND TO RICHARD PETROVSKY IBT REPRESENTATIVE
LOCAL 986 TEAMSTERS UNION.